# SLOANE AND WALSH LLP

Attorneys at Law

One Boston Place
201 Washington Street, Suite 1600
Boston, Massachusetts 02108
Telephone (617) 523-6010
Fax: (617) 227-0927
www.sloanewalsh.com

Anthony J. Antonellis
Direct Dial: 857-321-7007
Direct Fax: 617-303-1750
E-Mail: aantonellis@sloanewalsh.com
Also admitted: NH, CT

Boston, Massachusetts
Lincoln, Rhode Island
Bedford, New Hampshire
Glastonbury, Connecticut

January 13, 2021

**VIA CERIFIED MAIL AND EMAIL (**jpoliquin@nhdlaw.com**)**

James D. Poliquin, Esq.
Norman, Hanson & DeTroy, LLC
Two Canal Plaza
P.O. Box 4600
Portland, ME 04112-4600

| **RE:** | **Claim No.:** | 19003828 |
|---|---|---|
| | Insured: | Hestia Management LLC |
| | Policy No.: | PAV0205873 |
| | Date of Loss: | August 11, 2019 |
| | Loss Location: | 114 R June Street, Worcester, MA 01602 |

Dear Attorney Poliquin:

As you are aware, this office has been retained by Global Indemnity Group Services, LLC ("Global Indemnity") in regards to the above-referenced matter.

The purpose of this letter is to advise you and the Insured of Global Indemnity's position with respect to coverage for the subject claim pursuant to policy PAV0205873 issued to Hestia Management LLC for the Property at 114 R June Street, Worcester, MA 01602 (the "Property"), with effective dates of July 12, 2019 to July 12, 2020 (the "Policy").

Global Indemnity values your client as an insured; however, Global Indemnity has determined that there is no coverage for your client's claim under the policy captioned above for the claim, as is more fully discussed below. After you have reviewed this letter, if there is

James D. Poliquin, Esq.
January 13, 2021
Page **2** of **12**

additional information you would like Global Indemnity to consider, please forward it to me. Also, if you have any questions about this letter or your claim, please contact me.

In considering your request for coverage on behalf of Hestia Management, LLC, we have carefully reviewed the Policy. No other policies were considered. We also reviewed your position regarding coverage and its basis. As you know, we conducted an in depth investigation of this claim upon receipt of the notice of the Loss.

## FACTUAL BACKGROUND REGARDING LOSS

Penn-America Insurance Company ("Penn-America"), a member of Global Indemnity Limited issued a commercial lines common policy to Hestia Management LLC (the "Insured") with policy number PAV0205873 (the "Policy") with effective dates from July 12, 2019 to July 12, 2020. The Policy includes coverage for three buildings; 116A June Street, Worcester, MA; 114R June Street, Worcester, MA; and 116 June Street, Worcester, MA (hereinafter the "June Street Properties"). 114R June Street, the location of the subject loss (the "Property"), has been vacant since May, 2019.

On or about August 20, 2019, Global Indemnity received notice of a fire damage claim to 114R June Street, Worcester, MA. The Property is a two family rental home built in 1920. The reported fire occurred on August 11, 2019. The building was vacant (i.e. no tenants) at the time of the August 11, 2019 fire. A prior fire occurred at the Property on May 13, 2019, and as a result, the tenants at the time vacated the Property.

It is our understanding that the May 13, 2019 fire damaged the second floor unit and centered on electrical wiring in the attic / ceiling area above the second floor apartment's bathroom.

At the time of the May 13, 2019 fire, the Insured was in negotiations to purchase the Property. It is our understanding that the Insured entered into a Purchase and Sale Agreement on June 5, 2019 for the three properties mentioned above. Various building permits were pulled by the previous owner after the May 13, 2019 fire to repair the damage. While the Insured, through counsel, maintains that the Property was repaired prior to closing, the permits, and sign offs provided by the Insured from the Worcester Building Department are unclear as to the final signoff. The correspondence provided by the Insured pertaining to the sequence of events leading up to the closing regarding the repairs indicate that the closing attorney, Attorney O'Sullivan, recommended to the Livshits that the permits had all been closed out and the real estate broker had done a walkthrough. He recommended the Livshits closing on the Property.

James D. Poliquin, Esq.
January 13, 2021
Page **3** of **12**

On or about July 8, 2019, the Insured submitted an application for insurance to Penn-America. It is important to note that the application for insurance (Form Acord 140) and the accompanying Habitational Supplemental Application (Form PAG UNG A 2070 0318) both indicate that 114R June Street was rented and not vacant. Also noteworthy, no claims or losses or occurrences were noted in the loss history section (para. 15) of the Habitational Supplemental Application. This form was electronically signed by Ms. Sonia Livshits, of Hestia Management, LLC.

An email string dated July 3, 2019 from Ms. Sonya Livshits to Hestia's retail insurance agent, Lev Duhkon, contains an email from May 15, 2019, indicating that 114R June Street was vacant. Also, during Mr. Livshits examination under oath, he confirmed that 114R June Street was vacant at the time Hestia Management LLC closed on the Properties until the August 11, 2019 fire, which includes the time period when the application for insurance was completed and submitted to Penn-America.

On July 11, 2019, the day before the effective date of the Policy, the City of Worcester issued correspondence to the Insured condemning the Property located at 114R June Street, Worcester, MA. As discussed in more detail below, the Insured contends that he received this correspondence on or about July 26, 2019, and believes he provided it to his insurance agent, Mr. Lev Dukhon of ALD Insurance Agency. Mr. Livshits has been unable to provide this documentation.

The Insured asserts that the prior May 13, 2019 Notice of Condemnation from the City of Worcester was never received by the Insured, as it was issued to the prior owner, Ben Real Estate, LLC. Further, the Insured asserts that during the time period from May 13, 2019 to the purchase on June 27, 2019, Ben Real Estate represented that all the damage from the May 13, 2019 fire was repaired and produced the building permit sign offs. It is asserted that the Insured's realtor, Mr. Chuck Cronin did the walk through on the property.

As noted above, the Insured's closing attorney, Attorney O'Sullivan, reviewed the building permits and then advised the Insured that he could go through with the purchase.

On July 11, 2019, the City of Worcester issued another Notice of Condemnation. Inspector John Carlson of the Worcester Housing & Health Inspectional Services Dept. has indicated that the letter was just a copy of their May 13, 2019 Notice to Ben Real Estate. It is our understanding there was no new inspection or loss event between the purchase on June 27, 2019 and July 11, 2019. The City of Worcester learned that there was a new owner and, thus, re-issued the notice.

James D. Poliquin, Esq.
January 13, 2021
Page **4** of **12**

We note that during the Insured's examination under oath, he testified that he did not receive the notice until July 26, 2019. He testified that he immediately contacted Alpha Smart Builders ("ASB") and inspected the property with them. The inspection with ASB occurred on or about July 19, 2019. There is no indication that the Insured informed Global Indemnity of the Notice of Condemnation at this time or at any time prior to the August 11, 2019 fire.

The Insured asserts that on August 2, 2019, ASB submitted its estimate to renovate 114R and 116 June Street. The second fire occurred nine days later on August 11, 2019.

Brush County Claims completed a damage assessment on August 29, 2019. This assessment was limited to the damage caused by the August 11, 2019 fire, i.e. damage to the first floor apartment and damage to the second floor back entry. It is our understanding that damage from the May 13, 2019 fire was evident during the Brush county Assessment.

On January 14, 2020, the Insured attended a hearing regarding the condemnation of the Property, and another hearing sometime in February, 2020 in which the City of Worcester stated that the City would be issuing an order to demolish the property. It is our understanding that that order has yet to be issued.

Our office noticed Mr. Livshits examination under oath on April 23, 2020, and requested certain documents regarding the Claim be provided to our office to provide the Insured with an opportunity to explain and show why coverage should be afforded. While some documents were provided on May 11 and 12, 2020, prior to the scheduled examination under oath, additional documentation was requested during the examination under oath of May 13, 2020.

On May 19, 2020, Attorney Walker, Hestia Management LLC's then attorney in this matter, advised our office that he had requested documents from Hestia's closing attorney and realtor regarding documentation pertaining to repairs and the condition of the Property at the time of purchase. Attorney Walker also advised that Mr. Livshits was reviewing prior correspondence and emails with his retail insurance agent regarding the Property.

On June 10, 2020 and on June 16, 2020, our office requested a status of the remaining documents needed. On June 16, Attorney Walker responded and provided the May 13, 2019 and July 11, 2019 Notice of Condemnation letters from the City of Worcester regarding the Property.

On June 16, 2020, our office again requested the needed documentation from Attorney Walker.

On July 1, 2020 and July 14, 2020, Attorney Walker provided additional documents, to include those documents previously discussed above and in our prior correspondence, namely; Ms. Livshits email to the retail insurance agent, HUD settlement statement, a rent roll from the realtor, dated April 24, 2019, the ASB estimate, and imagery taken by the realtor on or about April 27, 2019.

On August 12, 2020, our office again requested the needed documentation from Attorney Walker. On August 14, 2020, Attorney Walker advised our office that he had withdrawn his representation of Hestia Management LLC in this matter. As such, on August 18, 2020, we sent correspondence directly to Hestia Management LLC, requesting the outstanding documents needed to complete the investigation.

On September 28, 2020, you notified our office that you were now representing the insured in this matter. You subsequently provided various documents to our office for review. These documents include emails from closing Attorney O'Sullivan, noted above, correspondence from you to our office, the title exam for the Property, communications between the Insured and Lev Dukhon of ALD Insurance Agency, additional email correspondence previously provided, and both notices of condemnation (also previously provided).

## **APPLICABLE POLICY PROVISIONS**

As you know, Penn-America issued the Insured a Commercial Lines Common Policy, policy no. PAV0205873, with effective dates of July 12, 2019 through July 12, 2019 for the insured locations of 116A June Street, 116 June Street, and 114R June Street, Worcester, MA (the "Policy"). The Policy includes Building and Personal Property Coverage Form, CP 00 10 10 12, as well as additional endorsements. The Policy provides, in relevant part:

  A. **Coverage**

  *We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.*
  ...

  3. ***Covered Causes of Loss***
  *See applicable Causes of Loss form as shown in the Declarations.*
  ...

  B. **Exclusions And Limitations**

James D. Poliquin, Esq.
January 13, 2021
Page **6** of **12**

>  *See applicable Causes Of Loss form as shown in the Declarations.*
>  *...*
>
>  **E. Loss Conditions**
>
>  *The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions:*
>
>  *...*
>  3.   ***Duties In The Event Of Loss Or Damage***
>
>       a.  *You must see that the following are done in the event of loss or damage to Covered Property:*
>           - (1) *Notify the Police if a law may have been broken.*
>           - (2) *Give us prompt notice of the loss or damage. Include a description of the property involved.*
>           - (3) *As soon as possible, give us a description of how, when and where the loss of damage occurred.*
>           - (4) *Take all reasonable steps to protect the Covered Property from further damage ...*
>           - (5) *At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.*
>           - (6) *As often as may be reasonably required, permit us to inspect the property proving the loss damage and examine your books and records. Also take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.*
>           - (7) *Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.*
>           - (8) *Cooperated with us in the investigation or settlement of the claim.*
>       b.  *We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.*
>
>  …

Building and Personal Property Coverage Form, CP 00 10 10 12.

James D. Poliquin, Esq.
January 13, 2021
Page **7** of **12**

The Commercial Property Conditions Form, Form CP 00 90 07 88, contains the following language:

*This Coverage Part is subject to the following conditions, the Common Policy Conditions and applicable Loss Conditions in commercial Property Coverage Forms.*

***A. CONCEALMENT, MISREPRESENTATION OR FRAUD***

*This Coverage Part is void in any case of fraud by you as it relates to this Coverage Part at any time. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:*

*1. This Coverage Part;*
*2. The Covered Property;*
*3. Your interest in the Covered Property; or*
*4. A claim under this Coverage Part.*

*...*

***H.   POLICY PERIOD, COVERAGE TERRITORY***

*Under this Coverage Part:*
*1. We cover loss or damage commencing:*
   *a. During the policy period shown in the Declarations;*
*...*

The Causes Of Loss – Special Form, form number CP 10 30 09 17, contains the following language.

*Words and phrases that appear in quotation marks have special meaning. Refer to Section G. Definitions.*

***A. Covered Causes Of Loss***

*When Special is shown in the Declarations, Covered Causes of Loss means direct physical loss unless the loss is excluded or limited in this policy.*

***B. Exclusions***
   *1. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.*
   ***a. Ordinance or Law***
   *The enforcement of or compliance with any ordinance or law;*
      *(1) Regulating the construction, use or repair of any property; or*

>   >   **(2)** Requiring the tearing down of any property, including the cost of removing its debris.
>   
>   This exclusion, Ordinance Or Law, applies whether the loss results from:
>   >   **(a)** An ordinance or law that is enforced even if the property has not been damaged; or
>   >   **(b)** The increased costs incurred to comply with an ordinance or law in the course of construction, repair, renovation, remodeling or demolition or property or removal of its debris, following a physical loss to that property.
>   
>   ...
>   
>   **c. Government Action**
>   Seizure or destruction of property by order of governmental authority.
>   ...
>   >   2. We will not pay for loss or damage caused by or resulting from any of the following:
>   
>   ...
>   >   **h.** Dishonest or criminal act (including theft) by you, any of your partners, members, officers, managers, employees (including temporary employees and leased employees), directors, trustees or authorized representatives, whether acting alone or in collusion with each other or with any other party; or theft by any person to whom you entrusted the property for any purpose for any reason, whether acting alone or in collusion with any other party.

## **DECLINATION OF COVERAGE**

Global Indemnity hereby provides its position that there is no coverage under the Policy for the loss resulting from the fire that occurred at the Property on August, 11, 2019 for the reasons outlined in detail below. The pertinent portions of the Policy are quoted in this letter. Kindly refer to the Policy for its complete terms and conditions.

In Massachusetts, pursuant to General Laws chapter 175, section 186, "[a] misrepresentation in an application for insurance will enable the insurer to avoid the policy if the misrepresentation was made with actual intent to deceive [] or [] is material." Hanover Ins. Co. v. Leeds, 42 Mass. App. Ct. 54, 57 (1997). A misrepresentation is "material" if it would "naturally influence the judgment of an underwriter in making the contract at all, or in estimating the degree and character of the risk, or in fixing the rate of the premium." Employers' Liab. Assur. Corp. Ltd. v. Vella, 366 Mass. 651, 655 (1975); *see also* Kobico, Inc. v. Pipe, 44 Mass. App. Ct. 103, 110 (1997). Accordingly, for section 186 purposes, "[i]f an insured falsely states a fact that would increase the premium, the misrepresentation is material." Barnstable County Ins. Co. v. Gale, 425 Mass. 126, 128 (1997).

James D. Poliquin, Esq.
January 13, 2021
Page **9** of **12**

Under Massachusetts law, one way a fact is deemed material for the purposes of MASS. GEN. LAWS c. 175 §186(a) is if it influences the insurance premium. Barnstable County Inc. Co. v. Gale, 425 Mass. 126, 128 (1997); see also Boston Mut. Ins. Co. v. New York Islanders Hockey Club, L.P., 165 F.3d 93, 97 (1st Cir. 1993) (affirming judgment in favor of insurer allowing rescission of policy, reasoning that the materiality requirement in MASS. GEN. LAWS c. 175, §186 limits avoidance to cases where an accurate answer could reasonably have affected insurer's choice to insure an applicant, impose exclusions, or to charge a higher premium).

Where the insured's misstatement would "naturally influence" the judgment of the underwriter, it may be material, without proof that the insurer would ultimately have refused to insure the applicant or would have charged a higher premium. Boston Mut. Ins. Co. v. New York Islanders Hockey Club, L.P., 165 F.3d 93, 97 (D. Mass. 1999). Additionally, the "risk of loss" contemplated by § 186 "is not limited to the degree or character of a specific actual loss, but refers to an insurer's general risk of economic loss or exposure to liability under the insured's policy as a whole." Tejada v. Commerce Ins. Co., 2002 WL 31546117 (Mass. App. Div. 2002) (material representation regarding insured's driving history may bar recovery even when loss was for theft).

Additionally, under Massachusetts law, an insurer may void a policy even if the policyholder made an innocent misrepresentation of a material fact in policy application if the disclosure of the truth would have affected the insurer's decision in fixing the rate of premium. RLI Ins. Co. v. Santos, 746 F.Supp.2d 255 (D.Mass.2010). *See also* Progressive Direct Insurance Company v. Martin, D.Mass.2019, 425 F.Supp.3d 48 (under Massachusetts law, an insurer may void a policy even if the policyholder made an innocent misrepresentation of material fact if the disclosure of the truth would have affected the insurer's decision in fixing the rate of premium).

Massachusetts courts have also found that a "material fact" misrepresentation in an insurance application would enable an insurer to avoid the policy, measured by an objective standard, is one which would naturally influence the judgment of an underwriter in making the contract at all, or in estimating the degree and character of the risk, or in fixing the rate of the premium. Merchants Ins. Group v. Spicer, 38 N.E.3d 1018, 88 Mass.App.Ct. 262 (2015). *See also* Aetna Life Ins. Co. v. Hub Hosiery Mills, 74 F.Supp. 599, affirmed 170 F.2d 547 (If applicant for life policy discovers facts which makes portions of his application no longer true and fails to make a full disclosure of such facts to insurer with actual intent to deceive or if matter known to applicant but not disclosed to insurer increases insurer's risk of loss, policy is cancelable).

Here, Hestia Management LLC, in completing the application for insurance, materially misrepresented the status of the premises as occupied, or not vacant. Mr. Livshits testified that 114R June Street had been empty, without tenants since the fire of May 13, 2019, and had been empty at the time he closed on the property in June, 2019, and had been continuously empty up until the August 11, 2019 fire. Mr. Livshits knew the property was vacant at the time of submittal of the application for insurance, and knew that the property would remain vacant, as he testified that he intended to complete certain work on the premises prior to renting it. Indeed, the purchase and sale agreement, signed by Hestia Management LLC, specifically listed the property as vacant. Also, the email correspondence provided between Ms. Livshits and the retail insurance agent, ALD Insurance Agency, Inc., indicates that 114R June Street was vacant at the time of application for insurance

We note that the vacancy of the Property would have naturally influenced the judgment of Global Indemnity underwriting in estimating the degree and character of the risk, and in fixing the rate of the premium.

Also, as noted above, the Insured also failed to include the prior May 13, 2019 fire at the insured premises of 114R June Street on the Habitational supplemental Application. The Insured also failed to indicate if the damage had been repaired to the premises. However, in his examination under oath testimony, Mr. Livshits stated that he was aware of the May 13, 2019 fire, well before submission of the application for insurance, and, of note, prior to the initial email from Ms. Livshits to the broker.

We note that if the application for insurance accurately indicated the May 13, 2019 fire in the previous loss section of the application, Global Indemnity underwriting would have required proof of repairs stemming from the May 13, 2019 fire before issuing the policy. Indeed, Global Indemnity would not have written a policy for a damaged property. Thus the omission of the prior May 13, 2019 fire from the Habitational supplemental Application vacancy of the Property would have naturally influenced the judgment of underwriting in making the contract at all, as well as in estimating the degree and character of the risk.

In his examination under oath, Mr. Livshits stated that he had received the City of Worcester July 11, 2019 correspondence condemning 114R June Street on or about July 26, 2019. While Mr. Livshits indicated that he may have provided this correspondence to his retail insurance agent, it is unclear if, and when this occurred. Nevertheless, no such documentation has ever been provided to Global Indemnity, nor was Global Indemnity notified of the Notice of Condemnation until well after the August 11, 2019 fire. It is clear, however that an order condemning a rental property is a material fact concerning the covered property.

Massachusetts common law alleviates an insurer from its obligations under the Policy where the insured has committed a breach of contract or has engaged in fraud. An insured must be truthful and abide by the covenant of good faith and fair dealing with the insurer. Falsification or concealment of any material facts would violate the terms of the Policy. These are standard, common law principles of insurance law well-rooted in Massachusetts case law. This concealment and / or misrepresentation of the status of the property (i.e. condemned) exposed Global Indemnity to associated costs and increased risks.

Global Indemnity specifically disclaims coverage under the Policy for the following reasons. With respect to each of the following reasons, please refer to the above-referenced policy language.

There is no coverage for the claims presented because the Insured, Hestia Management LLC, in completing the application for insurance, materially misrepresented the status of the premises as occupied, or not vacant. The vacancy of the Property would have naturally influenced the judgment of underwriting in estimating the degree and character of the risk, and in fixing the rate of the premium.

There is no coverage for the claims presented because the Insured, Hestia Management LLC, in completing the application for insurance, failed to include the prior May 13, 2019 fire at the insured premises of 114R June Street on the Habitational supplemental Application. Thus the omission of the prior May 13, 2019 fire from the Habitational supplemental Application would have naturally influenced the judgment of underwriting in making the contract at all, as well as in estimating the degree and character of the risk.

There is no coverage for the claims presented because the Insured, Hestia Management LLC, in completing the application for insurance, failed to include that all damage to the Property had been repaired and the date of the repairs on the Habitational supplemental Application. Thus the omission of any repaired damage and the date of any repairs from the Habitational supplemental Application would have naturally influenced the judgment of underwriting in making the contract at all, as well as in estimating the degree and character of the risk.

There is no coverage for the claims presented because the Insured, Hestia Management LLC, failed to notify Global Indemnity of the July 11, 2019 Notice of Condemnation issued by the City of Worcester prior to the loss. This concealment and / or misrepresentation of the status of the property (i.e. condemned) exposed Global Indemnity to associated costs and increased risks.

There is no coverage for loss or damage that is caused by the enforcement of or compliance with any ordinance or law "requiring the tearing down of any property, including the

James D. Poliquin, Esq.
January 13, 2021
Page **12** of **12**

cost of removing its debris" regardless of whether any other cause of loss contributes to the loss or damage. Thus, if the City issues an order requiring the demolition of 114R June Street, this exclusion bars coverage for those costs.

There is no coverage for "seizure or destruction of property by order of a governmental authority." Under this exclusion, any claim stemming from the destruction of 114R June Street due to an order by the City of Worcester is barred by the Government Action Exclusion.

In closing, please note that Global Indemnity reserves all rights and defenses under the Policy, at law, and in equity. Global Indemnity expressly reserves the right to disclaim coverage for additional reasons in the event that additional information relating to this loss becomes available. Please be advised that by transmittal of this letter, Global Indemnity does not and should not be deemed to have waived all or any rights or grounds it may have in connection with the above-referenced policy, nor should Global Indemnity be deemed to be estopped from asserting all or any coverage defenses that are currently available under the Policy or any defenses that may become applicable in this matter.

Please do not hesitate to contact me if you have any questions or concerns.

Very truly yours,

*/s/ Anthony J. Antonellis*

Anthony J. Antonellis, Esq.
Michael S. Antonellis, Esq.

AJA/MSA-mjb